**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KARANT PHOTO, INC.,           )<br>                              )<br>    Plaintiff,               )<br>                              )<br>v.                            )<br>                              )<br>KROTO INC., METAVERSE CORPORATION, )<br>JET.COM, INC., PRINTS.COM INC., )<br>and HEATHER GALLER possibly known as )<br>HEATHER DIAMOND,              )<br>                              )<br>    Defendants.               )  | Case No.:  18-3194<br>Honorable |

## COMPLAINT

Plaintiff Karant Photo, Inc. ("Plaintiff") for its complaint against Kroto Inc. d/b/a iCanvas and iCanvasArt; Metaverse Corporation d/b/a Fulcrum Gallery, Framed Art, Urban Loft Art, and Canvas Gallery Art; Jet.com, Inc.; Prints.com Inc. d/b/a Prints.com; and Heather Galler possibly known as Heather Diamond, states as follows.

## PARTIES

1. Karant Photo, Inc. is an Illinois corporation with its principal office located in Chicago, Illinois.

2. Kroto Inc. d/b/a iCanvas and iCanvasArt ("Kroto") is an Illinois corporation with its principal office and warehouse located in Morton Grove, Illinois. Kroto sells prints and wall art at www.icanvas.com and through a limited number of third party retailers. Kroto's employees publish and distribute these prints from Kroto's office and warehouse in Morton Grove, Illinois.

1

3. Metaverse Corporation ("Metaverse") is a New Jersey corporation with its principal place of business in Monmouth Junction, New Jersey. Metaverse is a multichannel online retailer in the wall art and home décor market, advertising and selling wall art nationwide from the following interactive Internet stores: www.fulcrumgallery.com, www.framedart.com, www.urbanloftart.com, www.canvasgalleryart.com, and www.greatartnow.com (collectively, the "Metaverse Websites"). Metaverse conducts business and transactions in the State of Illinois, including this judicial district, by continuously and systematically placing goods into the stream of commerce for distribution throughout the United States, and directed specifically to Illinois. Metaverse maintains an interactive commercial website, offers to ship products to Illinois, and allows customers in Illinois to create accounts, calculate shipping, and order products to Illinois. Metaverse also advertises reviews of its products and services made by Illinois customers, thus holding itself out as transacting business in Illinois and further encouraging Illinois residents to transact with Metaverse.

4. Jet.com, Inc. ("Jet") is a New Jersey corporation with its principal place of business in Hoboken, New Jersey. Jet is an online retailer and retail service provider operating from the following interactive Internet store: www.jet.com. Jet conducts business and transactions in the State of Illinois, including this judicial district, by continuously and systematically placing goods into the stream of commerce for distribution throughout the United States, and directed specifically to Illinois. These contacts include maintaining an interactive commercial website, offering to ship products to Illinois (but refusing to ship to other states), and allowing customers in Illinois to create accounts and order products to Illinois.

5. Prints.com Inc. ("Prints.com") is a Wisconsin corporation with its principal place of business in West Allis, Wisconsin. Prints.com is an online retailer and retailer service

provider operating the following interactive Internet store: www.prints.com. Prints.com conducts business and transactions in the State of Illinois, including this judicial district, by continuously and systematically placing goods into the stream of commerce for distribution throughout the United States, and directed specifically to Illinois. These contacts include maintaining an interactive commercial website, offering to ship products to Illinois, and allowing customers in Illinois to order products to Illinois.

6. Upon information and belief, Heather Galler is a resident of the State of Hawaii. Galler conducts business and transactions in the State of Illinois, including this judicial district, by continuously and systematically placing goods into the stream of commerce for distribution throughout the United States, and directed specifically to Illinois. These contacts include contracting with and/or licensing Kroto, an Illinois corporation, to distribute products, including the infringing works, from Illinois. Upon information and belief, Galler also contracted with or licensed Metaverse to sell products, including the infringing works, to Illinois residents. Also, upon information and belief, Galler sells products directly to Illinois residents through Galler's own interactive Internet business (https://www.etsy.com/shop/heathergallerart and http://www.findfolkart.com). Upon information and belief, Heather Galler may also be known as Heather Diamond. This complaint will refer to Heather Galler, potentially also known as Heather Diamond, as "Galler".

## JURISDICTION AND VENUE

7. This court's jurisdiction is invoked under 28 U.S.C. §§ 1331 and 1338 because this case arises from claims of copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (d), and § 1400(a), because the defendants reside and can be found in this district, or a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district, or, if there is no other district in which an action may otherwise be brought as provided in § 1391(b), because one or more of the defendants is subject to the court's personal jurisdiction in this action.

9. Further, as set forth in Paragraphs 2–6 of this Complaint, each identified defendant has contacts in this district sufficient to subject it or her to the personal jurisdiction of this district as if this district were a separate state. Exercising jurisdiction over these defendants is fair, just, and reasonable considering the quality and nature of the defendant's acts that occur in Illinois and which affect interests located in Illinois. Defendants have purposefully availed themselves of the privilege of conducting activities in Illinois, and should reasonably anticipate being haled into court in Illinois.

## FACTS

**I.    Authorship of the Photograph, Registration, and Ownership.**

10. Barbara Karant is nationally known for her photography. She was educated at the Rhode Island School of Design (BFA) and the Art Institute of Chicago (MFA). In addition to her photographic practice, she currently is a visiting critic and mentor at Columbia College. Ms. Karant has worked as a commercial photographer for more than 25 years, and her work is included in the permanent collections of the Art Institute of Chicago, The Chrysler Museum, The Polaroid Collection, and The Avon Collection, and her work has appeared in numerous galleries and museums across the country. Ms. Karant's commercial work has been published in Architecture, Interior Design, Architectural Digest, Metropolitan Home, Chicago Magazine, and

Esquire magazines, The New York Times, and many other publications, and she is the author of two books: GREYHOUNDS and SMALL DOG BIG DOG. Ms. Karant has lectured widely on photographic subjects at the University of Illinois–Chicago and Loyola University, and she has been interviewed by ABC, CBS, and Fox about her photography.

11. Ms. Karant is the president of Greyhounds Only, Inc., ("Greyhounds Only") an Illinois nonprofit organization dedicated to the rescue and adoption of greyhound dogs.

12. From around 2000 to 2007, Ms. Karant took a number of photographs of greyhound dogs. She published the photographs in a book titled, *Greyhounds*, on November 1, 2008. The *Greyhounds* book was sold online directly by Ms. Karant, and also via retailers like Amazon and Barnes & Nobles. Ms. Karant's photography in the book generated positive reviews nationwide after the book was published. A portion of the proceeds generated by the sale of the *Greyhounds* book were donated to greyhound adoption and rescue organizations. Many of the images taken by Ms. Karant for the Greyhounds book have been sold as wall art and in marketing products for Greyhounds Only.

13. For the cover of the *Greyhounds* book, Ms. Karant used a photograph that she took of her own greyhound dog named Slim (the "Slim Photograph"). The Slim Photograph captured Slim's characteristic body position, head tilt, ear flop, eye contact and reflection, and expression, among other unique characteristics.

14. After publication, the *Greyhounds* book and the Slim Photograph became closely associated with the Greyhounds Only organization, and are now part of the Greyhounds Only brand. The Slim Photograph has helped raise awareness for Greyhounds Only and greyhound adoption groups nationally, and has helped generated fundraising and adoptions of greyhounds.

15. Ms. Karant registered the Slim Photograph (along with all other photographs in the *Greyhound* book) with the United States Copyright Office on February 12, 2009, under Registration Number TX0006935829.

16. Ms. Karant owned the copyright to the Slim Photograph until April 23, 2018, at which time she assigned the copyright to Karant Photo, Inc. At the time of the filing of this complaint, Karant Photo, Inc. is the owner of the copyright in the Slim Photograph.

**II.     Galler's Unauthorized Usage**

17. Galler copied and reproduced the entire Slim Photograph.

18. Exhibit A to this complaint shows the Slim Photograph on the cover of the *Greyhounds* book and the Galler reproduction interposed on top of the Slim Photograph. It is obvious to the naked eye that Galler reproduced the Slim Photograph identically and only colored it. Later, she would draw "angel wings" on the reproduced image.

19. Galler's reproduction of the Slim Photograph does not add anything new to the photograph with a further purpose or different character from the original Slim Photograph. Galler's reproduction does not alter the Slim Photograph with new expression, meaning, or message. The artistic expression is the same, and the intrinsic uses of the Slim Photograph and Galler's reproduction are identical. Galler's reproduction does not represent expenditure of intellectual labor, but rather "colors-by-numbers" the Slim Photograph, even in similar shades, hues, and proportions depicted in the original Slim Photograph. Some portions of the Slim Photograph, like the eyes of the greyhound, do not appear to have been colored by Galler at all. The Slim Photograph remains the individual focal point of Galler's reproduction.

20. Galler's reproduction is purely commercial, and usurps entirely the market and/or potential market for the Slim Photograph. It has been mass-produced by the Defendants as wall art and sold at discounted prices.

21. When initially confronted about the reproduction, Galler claimed that that it was an original work commissioned by a client. Subsequently, Galler removed the reproduction from her webpage and Etsy store.

22. Upon information and belief, Galler at some point reproduced the Slim Photograph and published it to Kroto, Metaverse, Jet, and/or Print.com.

23. Upon information and belief, Galler at some point reproduced the Slim Photograph and published and sold it on merchandise.

24. Upon information and belief, Galler at some point reproduced the Slim Photograph and published or authorized its publication on http://www.geckorouge.co.uk.

25. Upon information and belief, Galler at some point reproduced the Slim Photograph and published it on other websites, including youtube.com.

26. Upon information and belief, Galler at some point held herself out as the copyright owner of the Slim Photograph even though she knew that she was infringing on Karant's copyright in the Slim Photograph.

27. Upon information and belief, Galler has experienced a profit as a result of her unauthorized reproductions of the Slim Photograph.

28. Upon information and believe, Galler has used the Slim Photograph to advertise her webpages and products, and to promote her brand with various online retailers. Her infringements of the Slim Photograph arose in the course of advertising.

29. Neither the current nor any past owner of the copyright on the Slim Photograph has authorized Galler to reproduce, copy, or sell the Slim Photograph.

**III.    Kroto's Unauthorized Usage**

30. Kroto copied and published the Slim Photograph on its website.

31. Kroto's usage of internet cookies on its website enables Kroto to reproduce the Slim Photograph in advertisements to potential customers, even after they navigate away from the Kroto website. Each reproduction of the Slim Photograph in an advertisement on another webpage as a result of internet cookies constitutes a separate unauthorized usage and a separate infringement.

32. Kroto copied, reproduced, and published the Slim Photograph in mass-produced prints, and has sold those prints through its webpage to customers around the United States.

33. Upon information and belief, Kroto profited and continues to profit from its unauthorized usage of the Slim Photograph.

34. Neither the current nor any past owner of the copyright on the Slim Photograph has authorized Kroto to reproduce, copy, or sell the Slim Photograph.

**IV.    Metaverse's Unauthorized Usage**

35. Metaverse copied and published the Slim Photograph on each of the Metaverse Websites.

36. Metaverse's usage of internet cookies on the Metaverse Websites enables Metaverse to reproduce the Slim Photograph in advertisements to potential customers, even after they navigate away from the Metaverse Websites. Each reproduction of the Slim Photograph in an advertisement on another webpage as a result of internet cookies constitutes a separate unauthorized usage and a separate infringement.

37. Metaverse copied, reproduced, and published the Slim Photograph in mass-produced prints, and has sold those prints through its webpage to customers around the United States.

38. Upon information and belief, Metaverse profited and continues to profit from its unauthorized usage of the Slim Photograph.

39. Neither the current nor any past owner of the copyright on the Slim Photograph has authorized Metaverse to reproduce, copy, or sell the Slim Photograph.

**V.     Jet's Unauthorized Usage**

40. Jet copied and published the Slim Photograph on the Jet website.

41. Jet's usage of internet cookies on the Jet website enables Jet to reproduce the Slim Photograph in advertisements to potential customers, even after they navigate away from the Jet websites. Each reproduction of the Slim Photograph in an advertisement on another webpage as a result of internet cookies constitutes an separate unauthorized usage and a separate infringement.

42. Jet copied, reproduced, and published the Slim Photograph in mass-produced prints, and has sold those prints through its webpage to customers around the United States.

43. Jet does not passively store material at the direction of users, but rather exercises oversight and control over the publication of material, including the Slim Photograph, on its website.

44. Upon information and belief, Jet profited and continues to profit from its unauthorized usage of the Slim Photograph.

45. Neither the current nor any past owner of the copyright on the Slim Photograph has authorized Jet to reproduce, copy, or sell the Slim Photograph.

**VI.   Prints.com's Unauthorized Uses**

46.   Prints.com copied and published the Slim Photograph on its website.

47.   Prints.com's usage of internet cookies on its website enables Prints.com to reproduce the Slim Photograph in advertisements to potential customers, even after they navigate away from the Prints.com website. Each reproduction of the Slim Photograph in an advertisement on another webpage as a result of internet cookies constitutes an separate unauthorized usage and a separate infringement.

48.   Prints.com copied, reproduced, and published the Slim Photograph in mass-produced prints, and has sold those prints through its webpage to customers around the United States.

49.   Upon information and belief, Prints.com profited and continues to profit from its unauthorized usage of the Slim Photograph.

50.   Neither the current nor any past owner of the copyright on the Slim Photograph has authorized Prints.com to reproduce, copy, or sell the Slim Photograph.

**COUNT I – Copyright Infringement
Against Each Defendant**

51.   Plaintiff hereby incorporates and realleges Paragraphs 1–50 as though fully stated herein Paragraph 51.

52.   Defendants did not have permission or rights granted from the copyright owner to reproduce, distribute, or display the Slim Photograph.

53.   Defendants and/or their agents reproduced and/or distributed and/or displayed the copyrighted Slim Photograph, or caused the copyrighted Slim Photograph to be reproduced and/or distributed and/or displayed, in violation of the Copyright Act, 17 U.S.C. § 101 et seq.

54. Defendants' volitional acts constitute infringement of Plaintiff's copyright that has caused and is causing irreparable harm and damage to Plaintiff. Even if Defendants' volitional acts of infringement were not "intentional," they still constitute infringement for which liability attaches under the Copyright Act.

55. Plaintiff is entitled to recover from Defendants the damages, including attorneys' fees and costs, that Plaintiff has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of violation alleged above or at Plaintiff's election to recover statutory damages, if applicable. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained, but will be established according to proof at trial.

## COUNT II – Contributory Copyright Infringement
## Against Galler

56. Plaintiff hereby incorporates and realleges Paragraphs 1–55 as though fully stated herein Paragraph 56.

57. Galler intentionally induced or encouraged other defendants and/or third-parties, including third-party websites, to reproduce, distribute, or display the Slim Photograph, even though Galler did not have any right to do so.

58. Galler knowingly took steps that were substantially certain to result in direct infringement, including distributing the Slim Photograph to other entities that did not have permission or a license to reproduce or display the Slim Photograph knowing that those entities would reproduce or display the Slim Photograph in violation of the copyright.

59. Galler made a material contribution to the direct infringement.

60. Galler earned a profit as a result of other entities reproducing or displaying the Slim Photograph in violation of the copyright.

61. Galler's acts, each individually, constitute contributory copyright infringement in violation the Copyright Act, 17 U.S.C. § 101 et seq.

62. Plaintiff has suffered and continues to suffer financial loss as a result of Galler's conduct.

63. Plaintiff is entitled to recover from Galler the damages, including attorneys' fees and costs, that Plaintiff has sustained and will sustain, and any gains, profits, and advantages obtained by Galler as a result of her acts of violation alleged above or at Plaintiff's election to recover statutory damages, if applicable. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained, but will be established according to proof at trial.

### COUNT III – Vicarious Copyright Infringement
### Against Galler

64. Plaintiff hereby incorporates and realleges Paragraphs 1–55 as though fully stated herein Paragraph 64.

65. Galler profited and continues to profit from the direct copyright infringement of the Slim Photograph by other Defendants and entities, while declining to exercise a right to stop or limit the infringing acts.

66. Galler had and has the right and ability to supervise the infringing activity and also had and has a direct financial interest in such activities.

67. Galler's acts, each individually, constitute vicarious copyright infringement in violation the Copyright Act, 17 U.S.C. § 101 et seq.

68. Plaintiff has suffered and continues to suffer financial loss as a result of Defendants' conduct.

69. Plaintiff is entitled to recover from Galler the damages, including attorneys' fees and costs, that Plaintiff has sustained and will sustain, and any gains, profits, and advantages

obtained by Galler as a result of their acts of violation alleged above or at Plaintiff's election to recover statutory damages, if applicable. At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained, but will be established according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment:

(A) Permanently enjoining and restraining Defendants, their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with the Defendants from:

    (1) reproducing, distributing, or displaying the Slim Photograph;
    (2) contributing to or inducing any third party to reproduce, distribute, or display the Slim Photograph;

(B) Directing Defendants to:

    (1) Turn over or destroy all copies, including all electronic copies, of the Slim Photograph;
    (2) Pay to Plaintiff all the actual damages it and Barbara Karant suffered as a result of the acts of Defendants complained of herein, together with prejudgment interest;
    (3) Account for and pay to Plaintiff all profits derived by Defendants from their acts complained of herein, together with prejudgment interest;
    (4) At Plaintiff's election, pay statutory damages based upon Defendants' acts of infringement that began following Plaintiff's registration of copyrights in the Photographs;
    (5) At Plaintiff's election, pay an increased award for Plaintiff's statutory damages for Defendants' willfully infringing acts;
    (6) Pay Plaintiff's reasonable attorneys' fees and costs in this action; and

(C) Awarding Plaintiff such further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all issues triable by jury.

**KARANT PHOTO, INC.**

*/s/ Benjamin M. Jacobi*
One of its attorneys

Benjamin M. Jacobi, #6296811
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: 847-291-0200
Facsimile: 847-291-9230
bjacobi@okgc.com